UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE COMPANY,

                Plaintiff,

v.

NORTHERN HILLS SENIOR LIVING
CENTERS, LLC,

                Defendant.

**COMPLAINT**
Civil Action No.: 2:20-cv-2064

Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY ("PMAIC"), by and through its attorneys, Smith, Sovik, Kendrick & Sugnet, P.C., as and for its Complaint, alleges as follows:

## JURISDICTION

1. This Court has original subject matter jurisdiction over the claims presented in this Complaint pursuant to 28 U.S.C. § 1332.

2. This is a civil action between citizens of different states, as described below.

3. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as described below.

## VENUE

4. The Eastern District of New York is a proper venue for this action pursuant to 28 U.S.C. § 1391 (a) (1) and (a) (2).

5. Defendant maintains an office at 199 Community Drive, Great Neck, which is within the County of Nassau and the State of New York.

6. Upon information and belief, Defendant maintains its principal place of business at 199 Community Drive, Great Neck, within the County of Nassau and the State of New York.

7. Nassau County is within this Court's territorial jurisdiction. 28 U.S.C. § 112 (c); 28 U.S.C. § 1391 (c).

8. A substantial portion of the events giving rise to this claim, including Plaintiff's demands for payment of premiums and Defendant's wrongful non-payment of premiums, occurred within the Eastern District of New York and more specifically within the County of Nassau. 28 U.S.C. § 1391 (b), (d).

## PARTIES

9. Plaintiff, PMAIC, is a foreign business corporation duly organized under the laws of the Commonwealth of Pennsylvania and authorized to do business as an insurer in the State of New York with its principal place of business located at 380 Sentry Parkway, Blue Bell, Montgomery County, Pennsylvania 19422.

10. PMAIC is deemed a citizen of the Commonwealth of Pennsylvania.

11. PMAIC is not a citizen of the State of New York.

12. Upon information and belief, Defendant, NORTHERN HILLS SENIOR LIVING CENTERS, LLC ("Northern Hills"), is a Delaware Limited Liability Corporation.

13. Northern Hills has an office at 199 Community Drive, Great Neck, County of Nassau, State of New York.

14. The contract at issue here listed 199 Community Drive, Great Neck, State of New York as the mailing address for Northern Hills. PMAIC sent mail via certified mail, return receipt requested, to this address, and Northern Hills signed for the mail.

15. Upon information and belief, Northern Hills has its principal place of business at 199 Community Drive, Great Neck, County of Nassau, State of New York.

16. Upon information and belief, one or more of Northern Hills' members is a citizen of the State of New York.

17. Upon information and belief, Jonathan Bleier is a member and a managing partner of Northern Hills and is a citizen of the State of New York.

18. Upon information and belief, Northern Hills is not, and cannot be deemed, a citizen of the Commonwealth of Pennsylvania.

19. Upon information and belief, none of Northern Hills' individual members is a citizen of the Commonwealth of Pennsylvania.

20. Upon information and belief, all of Northern Hills' individual members are citizens of a State other than the Commonwealth of Pennsylvania.

21. Upon information and belief, none of Northern Hills' corporate members have a state of incorporation in the Commonwealth of Pennsylvania.

22. Upon information and belief, none of Northern Hills' corporate members have a principal place of business in the Commonwealth of Pennsylvania.

23. Upon information and belief, all of Northern Hills' corporate members have either a state of incorporation or a principal place of business in a State other than the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND

24.     On or about May 19, 2016, at Northern Hills' request, PMAIC issued a Workers' Compensation and Employers' Liability Insurance Policy bearing PMAIC Policy Number 201605-07-60-62-9, which was a rewrite of PMAIC Policy Number 201600-07-60-62-9 (the "Insurance Policy").

25.     The Insurance Policy named Northern Hills as the insured. The "Insurance Policy – Information Page" (Form WC 00 00 01 A), commonly known as the Declarations for the Insurance Policy, is attached to this Complaint as Exhibit **"A"**.

26.     Subject to the terms and conditions of the Insurance Policy, PMAIC insured Northern Hills for its workers' compensation and employer's liability arising out of its operations in various states, including Massachusetts, New Hampshire, New York, Pennsylvania, and Rhode Island, for the policy period of April 1, 2016 through April 1, 2017.

27.     Northern Hills received and accepted the Insurance Policy.

28.     As a part of the Insurance Policy, PMAIC agreed to provide Northern Hills with insurance coverage as described therein in exchange for Northern Hills' agreement to timely pay all premiums and other costs due under the terms of the policies as calculated by PMAIC.

29.     An endorsement to the Insurance Policy amended the definition of premium to include the following language: "[t]he due date for audit and retrospective premiums is the date of the billing."

30.     As demonstrated by the Notice of Election of Retrospective Rating Plan, form NYLR-1, signed by Defendant on or about June 22, 2016, Northern Hills elected to use a Retrospective Rating Plan for the Insurance Policy. A copy of a Notice of Election reflecting Northern Hills' choice is attached to this Complaint as Exhibit **"B"**.

31.     Defendant selected the Large Risk Alternative Rating Option Plan for the Insurance Policy. This form was executed by Defendant's Controller, David Alt. (Exhibit **"C"**). The Plan Selection form stated in pertinent part (underlining from original):

> This is to confirm that <u>Northern Hills Senior Living Centers LLC</u> has selected the <u>Large Risk Alternative Rating Option</u> Plan for Policy Number <u>2016050760629</u> . . . .
>
> . . . .
>
> The undersigned certifies that the Named Insured understands that the choice of any plan other than the Fixed Cost or Merit Dividend will result in an adjustment of the Audited Premium based upon incurred losses, which include Allocated Loss Adjustment Expenses ("ALAE"), relating to the policy period. Rating plan calculations are subject to multiple annual adjustments and can result in additional or return billings. It is also certified that the Insured understands all terms, conditions and provisions of the Plan including the method of premium computation, payment and penalties for cancellation. . . . .
>
> The Named Insured understands that the advance premium of <u>**$1,001,436**</u> for the captioned Policy is merely an estimate of the ultimate premium payable by the Insured to the Insurance Company. The insured further understand [sic] that the ultimate premium payable will be determined by The PMA Group based upon Our calculation of incurred losses, which include ALAE, and audited payrolls relating to the Policy period. The Insured further understands that the ultimate determination of premium is made in accordance with the wording contained in the Policy, endorsements forming part of the Policy, this plan selection, and in accordance with the rates and rules of the applicable Workers' Compensation Rating Bureau as approved by the respective Insurance Department.

(Ex. **"C"** at p. 1).

32.     Retrospective Rating Plans are loss-sensitive. This Insurance Policy is a loss-sensitive product containing an incurred loss retrospectively rated plan in which policy premiums are subject to multiple annual adjustments by PMAIC based on incurred losses arising from claims initially made by Defendant's injured workers during the policy period. As a result of the annual

adjustments either additional premiums or return premiums are billed as described in the terms, conditions and endorsements to the policy. Once a loss-sensitive policy has reached its maximum premium or all claims are closed, the premium does not change further.

33. On or about January 19, 2018, the parties voided endorsement #15 to the Insurance Policy, which resulted in a $137,669.00 credit to Northern Hills.

34. On or about January 19, 2018, the parties added endorsement #20 to the Insurance Policy, which resulted in an additional $90,028.00 premium.

35. As a result of the endorsement changes, Northern Hills had a net premium credit of $47,641.00. The credit is reflected in an account invoice dated January 16, 2020. (Exhibit "**D**"). These transactions not at issue in this action.

36. On or about February 12, 2018, PMAIC audited Defendant's payrolls under the Insurance Policy, resulting in a credit of premium due Defendant in the amount of $190,146.00. The credit from audit of Defendant's payrolls was also applied to the account and is not at issue in this action. (Ex. "**D**").

37. At approximately 18 months after the Insurance Policy inception date and annually thereafter, per the terms of the Insurance Policy, PMAIC conducted annual retrospective adjustments based on incurred losses—filed claims for workers' compensation—which resulted in either a return of paid premium or additional owed premium.

38. As of the date of the First Retrospective Adjustment, Northern Hills had a credit of $237,787.00 [$47,641.00 credit from the endorsement changes +$190,146.00 credit from the Revised Final Audit]. (Ex. "**D**").

39. On or about February 12, 2018, PMAIC performed the First Retrospective Adjustment under the terms and conditions of the Insurance Policy, resulting in additional premium/state assessments due PMAIC in the amount of $624,595.00. (Ex. **"D"**).

40. After applying the aforementioned credits, Northern Hills owed $386,808 in retrospective premium/state assessments to PMAIC. (Ex. **"D"**).

41. On or about April 19, 2018, Northern Hills made a payment of $122,068. (Ex. **"D"**).

42. On or about September 28, 2018, PMAIC applied existing collateral in the amount of $265,000 to Northern Hills' outstanding balance. (Ex. **"D"**).

43. As a result of Defendant's payment and application of retained collateral by PMAIC, Northern Hills had a small credit balance of $260.00 on its account for the Insurance Policy as of September 2018.

44. On or about January 4, 2019, PMAIC performed its Second Retrospective Adjustment under the terms and conditions of the Insurance Policy resulting in additional premium/state assessments due PMAIC in the amount of $148,810.00. A copy of the Second Retrospective Adjustment under the Insurance Policy is attached as Exhibit **"E"**.

45. PMAIC notified Northern Hills of the amount due by sending a copy of the Second Retrospective Adjustment and supporting documentation (Ex. **"E"**), as well as an updated invoice reflecting the $260.00 credit due Northern Hills and the amount then due and owing PMAIC [$148,550.00 after the Second Retrospective Adjustment - $260.00 credit = $148,550.]. (Exhibit **"F"**).

46. Following the Second Retrospective Adjustment, Northern Hills made a payment of $40,000.00, which left a balance due and owing PMAIC of $108,550.00. (Ex. **"D"**).

47. On August 1, 2019, PMAIC demanded payment on the remaining balance. (Exhibit **"G"**).

48. On or about November 21, 2019, PMAIC performed its Third Retrospective Adjustment under the terms and conditions of the Insurance Policy. (Exs. **"D;" "F"**). As of that date, Northern Hills *still* owed PMAIC $108,550.00 as a result of the Second Retrospective Adjustment.

49. However, because the Insurance Policy had reached its maximum premium, the Third Retrospective Adjustment resulted in $0.00 additional premium due PMAIC, notwithstanding that significant total incurred losses of $1,265,320.00 on the part of Northern Hills would have otherwise resulted in an increase of $327,178.00 in incurred losses from the previous year's adjustment and would have resulted in significant increased premiums due PMAIC.

50. Following the Third Retrospective Adjustment, Northern Hills still owed PMAIC $108,550.00 in unpaid premium/state assessments due PMAIC since January 2019. (Exs. **"D;" "G"**).

51. PMAIC notified Northern Hills of the result of the Third Retrospective Adjustment and demanded payment of the outstanding balance of $108,550.00. (Exhibit **"H"**).

52. PMAIC has continued to demand payment of the amount owned by Defendant under the Insurance Policy, via written and verbal communications.

53. Northern Hills has failed, refused, and neglected to pay PMAIC $108,550.00 in outstanding premium/assessments due under the Insurance Policy leaving PMAIC without the use of this sum since the issuance of the Second Retrospective Adjustment.

54. By reason of the foregoing, PMAIC seeks a money judgment against Defendant in the amount of $108,550.00 on the Insurance Policy.

## COUNT I:
## BREACH OF CONTRACT

55. Plaintiff repeats and realleges the allegations set forth in Paragraphs "1" through "54" of this Complaint as if set forth here.

56. PMAIC has fully performed its obligations under the Insurance Policy.

57. By choosing to participate in a Retrospective Rating Plan, Northern Hills agreed to an incurred loss retrospectively rated plan in which policy premiums were subject to payroll audit and multiple annual adjustments by PMAIC based on incurred losses arising from claims initially made by Defendant's injured workers during the policy period.

58. By failing to pay amounts due under the Insurance Policy, Northern Hills has breached the terms and conditions of the Policy.

59. Additional premium resulting from the payroll audit and First Retrospective Adjustment are not at issue because Northern Hills satisfied that obligation by a combination of credits, a payment, and application of collateral by PMAIC.

60. Northern Hills breached its contract with PMAIC by failing to pay $108,550.00 of additional premium/assessments resulting from the Second Retrospective Premium Adjustment.

61. To date, Northern Hills remains in breach of contract for its continued failure to pay outstanding premium/assessments due on the Insurance Policy as a result of the Second Retrospective Adjustment.

62. Northern Hills' breach of the terms and conditions of the Insurance Policy has resulted in damages to PMAIC in the amount of $108,550.00 in outstanding premium/assessments due under the Insurance Policy plus pre and post-judgment interest together with the costs, fees and expenses of pursuing this action

**WHEREFORE**, Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, requests that this Court grant it judgment and the following relief:

A. Entering judgment for Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, against Defendant, NORTHERN HILLS SENIOR LIVING CENTERS, LLC, in the amount of $108,550.00 together with the following relief:

B. Awarding pre-judgment interest to Plaintiff from Defendant;

C. Awarding post-judgment interest to Plaintiff from Defendant;

D. Awarding reasonable attorneys' fees and the costs of this litigation; and

E. Granting such further relief as this Court deems fair, just, and equitable.

Dated: May 6, 2020

**SMITH, SOVIK, KENDRICK & SUGNET, P.C.**

By: _____
Karen G. Felter, Esq.
Bar Roll No.: KF1022
David M. Katz, Esq.
Bar Roll No.: DK7416
*Attorneys for Plaintiff,*
*Pennsylvania Manufacturers' Association*
*Insurance Company*
250 South Clinton Street, Suite 600
Syracuse, New York 13202
Telephone: (315) 474-2911
Facsimile: (315) 474-6015
Email: kfelter@smithsovik.com
dkatz@smithsovik.com

TO: NORTHERN HILLS SENIOR LIVING CENTERS, LLC
*Defendant*
199 Community Drive
Great Neck, New York 11021-5502

{S1167355.1}