UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE COMPANY,

              Plaintiff,

v.

NORTHERN HILLS SENIOR LIVING
CENTERS, LLC, JONATHAN BLEIER,
individually and as a member of NORTHERN
HILLS SENIOR LIVING CENTERS, LLC,
YAAKOV SOD a/k/a JACOB SOD, individually
and as a member of NORTHERN HILLS SENIOR
LIVING CENTERS, LLC, and BARUCH
JEREMIAS a/k/a BARRY JEREMIAS,
individually and as a member of NORTHERN
HILLS SENIOR LIVING CENTERS, LLC,

              Defendants.
_____

**FIRST AMENDED COMPLAINT**
Civil Action No.: 2:20-cv-2064

Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY ("PMAIC"), by and through its attorneys, Smith, Sovik, Kendrick & Sugnet, P.C., as and for its Complaint, alleges as follows:

## JURISDICTION

1.     This Court has original subject matter jurisdiction over the claims presented in this Complaint pursuant to 28 U.S.C. § 1332.

2.     This is a civil action between citizens of different states, as described below.

3.     The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as described below.

## VENUE

4. The Eastern District of New York is a proper venue for this action pursuant to 28 U.S.C. § 1391 (a) (1) and (a) (2).

5. Defendant, NORTHERN HILLS SENIOR LIVING CENTERS, LLC ("Northern Hills"), maintains an office at 199 Community Drive, Great Neck, which is within the County of Nassau and the State of New York.

6. Upon information and belief, Defendant, Northern Hills, maintains its principal place of business at 199 Community Drive, Great Neck, within the County of Nassau and the State of New York.

7. A substantial portion of the events giving rise to this claim, including Plaintiff's demands for payment of premiums and Defendant Northern Hills' wrongful non-payment of premiums, occurred within the Eastern District of New York and more specifically within the County of Nassau. 28 U.S.C. § 1391 (b), (d).

8. Nassau County is within this Court's territorial jurisdiction. 28 U.S.C. § 112 (c); 28 U.S.C. § 1391 (c).

9. Upon information and belief, Defendant, JONATHAN BLEIER ("Bleier"), is a resident of the State of New York.

10. Upon information and belief, Defendant, YAAKOV SOD a/k/a JACOB SOD ("Sod"), is a resident of the State of New York.

11. Upon information and belief, Defendant, BARUCH JEREMIAS a/k/a BARRY JEREMIAS ("Jeremias"), is a resident of the State of New York.

## PARTIES

12. Plaintiff, PMAIC, is a foreign business corporation duly organized under the laws of the Commonwealth of Pennsylvania and authorized to do business as an insurer in the State of New York with its principal place of business located at 380 Sentry Parkway, Blue Bell, Montgomery County, Pennsylvania 19422.

13. PMAIC is deemed a citizen of the Commonwealth of Pennsylvania.

14. PMAIC is not a citizen of the State of New York.

15. Upon information and belief, Defendant, Northern Hills, is a Delaware Limited Liability Corporation.

16. Defendant, Northern Hills, has an office at 199 Community Drive, Great Neck, County of Nassau, State of New York.

17. The contract at issue here listed 199 Community Drive, Great Neck, State of New York as the mailing address for Northern Hills. PMAIC sent mail via certified mail, return receipt requested, to this address, and Northern Hills signed for the mail.

18. Upon information and belief, Northern Hills has its principal place of business at 199 Community Drive, Great Neck, County of Nassau, State of New York.

19. Upon information and belief, Northern Hills is not, and cannot be deemed, a citizen of the Commonwealth of Pennsylvania.

20. Upon information and belief, one or more of Northern Hills' members is a citizen of the State of New York.

21. Upon information and belief, Defendant, Bleier, is a member and a managing partner of Northern Hills and is a citizen of the State of New York.

22. Upon information and belief, Defendant, Bleier, cannot be deemed a citizen of the Commonwealth of Pennsylvania.

23. Upon information and belief, Defendant, Sod, is a member of Northern Hills and is a citizen of the State of New York.

24. Upon information and belief, Defendant, Sod, cannot be deemed a citizen of the Commonwealth of Pennsylvania.

25. Upon information and belief, Defendant, Jeremias, is a member of Northern Hills and is a citizen of the State of New York.

26. Upon information and belief, Defendant, Jeremias, cannot be deemed a citizen of the Commonwealth of Pennsylvania.

27. Upon information and belief, none of Northern Hills' individual members is a citizen of the Commonwealth of Pennsylvania.

28. Upon information and belief, all of Northern Hills' individual members are citizens of a State other than the Commonwealth of Pennsylvania.

29. Upon information and belief, none of Northern Hills' corporate members have a state of incorporation in the Commonwealth of Pennsylvania.

30. Upon information and belief, none of Northern Hills' corporate members have a principal place of business in the Commonwealth of Pennsylvania.

31. Upon information and belief, all of Northern Hills' corporate members have either a state of incorporation or a principal place of business in a State other than the Commonwealth of Pennsylvania.

## FACTUAL BACKGROUND:
## THE PMA-NORTHERN HILLS POLICY

32. Defendants Bleier, Sod, and Jeremias own Defendant Northern Hills as members.

33. On or about May 19, 2016, at Northern Hills' request, PMAIC issued a Workers' Compensation and Employers' Liability Insurance Policy bearing PMAIC Policy Number 201605-07-60-62-9, which was a rewrite of PMAIC Policy Number 201600-07-60-62-9 (the "Insurance Policy").

34. The Insurance Policy named Northern Hills as the insured. The "Insurance Policy – Information Page" (Form WC 00 00 01 A), commonly known as the Declarations for the Insurance Policy, is attached to this Complaint as Exhibit **"A"**.

35. Subject to the terms and conditions of the Insurance Policy, PMAIC insured Northern Hills for its workers' compensation and employer's liability arising out of its operations through subsidiaries (collectively referred to as Northern Hills in this complaint) also named as insureds in various states, including Massachusetts, New Hampshire, New York, Pennsylvania, and Rhode Island, for the policy period of April 1, 2016 through April 1, 2017.

36. Northern Hills received and accepted the Insurance Policy.

37. As a part of the Insurance Policy, PMAIC agreed to provide Northern Hills with insurance coverage as described therein in exchange for Northern Hills' agreement to timely pay all premiums and other costs due under the terms of the policies as calculated by PMAIC.

38. An endorsement to the Insurance Policy amended the definition of premium to include the following language: "[t]he due date for audit and retrospective premiums is the date of the billing."

39. As demonstrated by the Notice of Election of Retrospective Rating Plan, form NYLR-1, signed by Defendant, Northern Hills, on or about June 22, 2016, Northern Hills elected

{S1226502.1}                                                    5

to use a Retrospective Rating Plan for the Insurance Policy. A copy of a Notice of Election reflecting Northern Hills' choice is attached to this Complaint as Exhibit **"B"**.

      40.    Defendants selected the Large Risk Alternative Rating Option Plan for the Insurance Policy. This form was executed by Defendant Northern Hills' Controller, David Alt. (Exhibit **"C"**). The Plan Selection form stated in pertinent part (underlining from original):

> This is to confirm that <u>Northern Hills Senior Living Centers LLC</u> has selected the <u>Large Risk Alternative Rating Option</u> Plan for Policy Number <u>2016050760629</u> . . . .
>
> . . . .
>
> The undersigned certifies that the Named Insured understands that the choice of any plan other than the Fixed Cost or Merit Dividend will result in an adjustment of the Audited Premium based upon incurred losses, which include Allocated Loss Adjustment Expenses ("ALAE"), relating to the policy period. Rating plan calculations are subject to multiple annual adjustments and can result in additional or return billings. It is also certified that the Insured understands all terms, conditions and provisions of the Plan including the method of premium computation, payment and penalties for cancellation. . . . .
>
> The Named Insured understands that the advance premium of **$1,001,436** for the captioned Policy is merely an estimate of the ultimate premium payable by the Insured to the Insurance Company. The insured further understand [sic] that the ultimate premium payable will be determined by The PMA Group based upon Our calculation of incurred losses, which include ALAE, and audited payrolls relating to the Policy period. The Insured further understands that the ultimate determination of premium is made in accordance with the wording contained in the Policy, endorsements forming part of the Policy, this plan selection, and in accordance with the rates and rules of the applicable Workers' Compensation Rating Bureau as approved by the respective Insurance Department.

(Ex. **"C"** at p. 1).

      41.    Retrospective Rating Plans are loss-sensitive. This Insurance Policy is a loss-sensitive product containing an incurred loss retrospectively rated plan in which policy premiums

are subject to multiple annual adjustments by PMAIC based on incurred losses arising from claims initially made by Defendant Northern Hills' injured workers during the policy period. As a result of the annual adjustments either additional premiums or return premiums are billed as described in the terms, conditions and endorsements to the policy. Once a loss-sensitive policy has reached its maximum premium or all claims are closed, the premium does not change further.

42. On or about January 19, 2018, the parties voided endorsement #15 to the Insurance Policy, which resulted in a $137,669.00 credit to Northern Hills.

43. On or about January 19, 2018, the parties added endorsement #20 to the Insurance Policy, which resulted in an additional $90,028.00 premium.

44. As a result of the endorsement changes, Northern Hills had a net premium credit of $47,641.00. The credit is reflected in an account invoice dated January 16, 2020. (Exhibit "**D**"). These transactions not at issue in this action.

45. On or about February 12, 2018, PMAIC audited Northern Hills' payrolls under the Insurance Policy, resulting in a credit of premium due to Northern Hills in the amount of $190,146.00. The credit from audit of Northern Hills' payrolls was also applied to the account and is not at issue in this action. (Ex. "**D**").

46. At approximately 18 months after the Insurance Policy inception date and annually thereafter, per the terms of the Insurance Policy, PMAIC conducted annual retrospective adjustments based on incurred losses—filed claims for workers' compensation—which resulted in either a return of paid premium or additional owed premium.

47. As of the date of the First Retrospective Adjustment, Northern Hills had a credit of $237,787.00 [$47,641.00 credit from the endorsement changes + $190,146.00 credit from the Revised Final Audit]. (Ex. "**D**").

{S1226502.1}   7

48. On or about February 12, 2018, PMAIC performed the First Retrospective Adjustment under the terms and conditions of the Insurance Policy, resulting in additional premium/state assessments due PMAIC in the amount of $624,595.00. (Ex. "**D**").

49. After applying the aforementioned credits, Northern Hills owed $386,808 in retrospective premium/state assessments to PMAIC. (Ex. "**D**").

50. On or about April 19, 2018, Northern Hills made a payment of $122,068. (Ex. "**D**").

51. On or about September 28, 2018, PMAIC applied existing collateral in the amount of $265,000 to Northern Hills' outstanding balance. (Ex. "**D**").

52. As a result of Northern Hills' payment and application of retained collateral by PMAIC, Northern Hills had a small credit balance of $260.00 on its account for the Insurance Policy as of September 2018.

53. On or about January 4, 2019, PMAIC performed its Second Retrospective Adjustment under the terms and conditions of the Insurance Policy resulting in additional premium/state assessments due PMAIC in the amount of $148,810.00. A copy of the Second Retrospective Adjustment under the Insurance Policy is attached as Exhibit "**E**".

54. PMAIC notified Northern Hills of the amount due by sending a copy of the Second Retrospective Adjustment and supporting documentation (Ex. "**E**"), as well as an updated invoice reflecting the $260.00 credit due Northern Hills and the amount then due and owing PMAIC [$148,550.00 after the Second Retrospective Adjustment - $260.00 credit = $148,550.]. (Exhibit "**F**").

55. Following the Second Retrospective Adjustment, Northern Hills made a payment of $40,000.00, which left a balance due and owing PMAIC of $108,550.00. (Ex. "**D**").

56. On August 1, 2019, PMAIC demanded payment on the remaining balance. (Exhibit **"G"**).

57. On or about November 21, 2019, PMAIC performed its Third Retrospective Adjustment under the terms and conditions of the Insurance Policy. (Exs. **"D;" "F"**). As of that date, Northern Hills *still* owed PMAIC $108,550.00 as a result of the Second Retrospective Adjustment.

58. However, because the Insurance Policy had reached its maximum premium, the Third Retrospective Adjustment resulted in $0.00 additional premium due PMAIC, notwithstanding that significant total incurred losses of $1,265,320.00 on the part of Northern Hills would have otherwise resulted in an increase of $327,178.00 in incurred losses from the previous year's adjustment and would have resulted in significant increased premiums due PMAIC.

59. Following the Third Retrospective Adjustment, Northern Hills still owed PMAIC $108,550.00 in unpaid premium/state assessments due PMAIC since January 2019. (Exs. **"D;" "G"**).

60. PMAIC notified Northern Hills of the result of the Third Retrospective Adjustment and demanded payment of the outstanding balance of $108,550.00. (Exhibit **"H"**).

61. PMAIC has continued to demand payment of the amount owned by Northern Hills under the Insurance Policy, via written and verbal communications.

62. Northern Hills has failed, refused, and neglected to pay PMAIC $108,550.00 in outstanding premium/assessments due under the Insurance Policy leaving PMAIC without the use of this sum since the issuance of the Second Retrospective Adjustment.

63. By reason of the foregoing, PMAIC seeks a money judgment against Defendants in the amount of $108,550.00 on the Insurance Policy.

## FACTUAL BACKGROUND:
## BLEIER, SOD, AND JEREMIAS' IMPROPER USE OF NORTHERN HILLS
## AND ITS SUBSIDIARIES

64. Bleier, Sod, and Jeremias—individually and as members of Northern Hills—completely dominated Northern Hills for their own ends.

65. Bleier, Sod, and Jeremias inadequately capitalized Northern Hills and its subsidiaries by improperly and continuously shifting money between the entities so that the entities would have the appearance of financial solvency while actually having no lasting financial holdings. Indeed, Bleier, Sod, and Jeremias directed that those accounts be cleared out before directing Northern Hills' subsidiaries to file for bankruptcy.

66. Among other wrongful and fraudulent schemes, Bleier, Sod, and Jeremias used shared operating accounts that they controlled in Northern Hills' name to make Northern Hills and its subsidiaries appear to have substantially more assets and liquidity than any single entity actually had. Similarly, Bleier, Sod, and Jeremias used a shared pension plan for their various entities to make their pension plan appear in a better condition than it actually is.

67. Similarly, Bleier, Sod, and Jeremias held out their address and offices as 199 Community Drive, Great Neck, New York, which is the same addressed used by Northern Hills.

68. Bleier, Sod, and Jeremias also used the same professionals to handle their affairs, including the affairs of Northern Hills and its subsidiaries, which ensured that Bleier, Sod, and Jeremias would have complete dominion and control over the financial and legal business (including, but not limited to, hiring the same lawyers, accountants, and bookkeepers) of Northern Hills and its subsidiaries. Bleier, Sod, and Jeremias used this improper control over the financial and legal affairs of Northern Hills and its subsidiaries for their own ends and not for the ends of Northern Hills or its subsidiaries.

69. As an example, Bleier, Sod, and Jeremias used their improper control over the financial and legal affairs of Northern Hills and its subsidiaries to make aggregate payments on behalf of various Northern Hills-related entities (*i.e.* "robbing Peter to pay Paul"). These aggregate payments served to satisfy creditors and allowed Northern Hills and its subsidiaries to obtain contracts without personal obligations being imposed on Bleier, Sod, and Jeremias as individuals.

70. Ultimately, these schemes allowed Bleier, Sod, and Jeremias to transfer the right to operate skilled nursing facilities owned by Northern Hills to Bear Mountain Healthcare, LLC without paying the debts of Northern Hills or its subsidiaries while reaping the personal benefit of the sale price for those entities.

71. Indeed, after siphoning the sale proceeds and other funds through Northern Hills' subsidiaries and then through Northern Hills, Bleier, Sod, and Jeremias orchestrated a post-sale scheme to bankrupt Northern Hills' subsidiaries (additional insureds on the Insurance Policy) and avoid debts that should have been paid, including the retrospective premiums amounting to $108,550 owed PMAIC under the Insurance Policy.

72. In response to the initial complaint in this suit, the attorney for Northern Hills threatened to utilize the same scheme against Plaintiff: having siphoned off the proceeds from their sale of Northern Hills' subsidiaries, Bleier, Sod, and Jeremias—through counsel for Northern Hills—threatened to have Northern Hills declare bankruptcy.

## COUNT I:
## BREACH OF CONTRACT

73. Plaintiff repeats and realleges the allegations set forth in Paragraphs "1" through "72" of this Complaint as if set forth here.

74. PMAIC has fully performed its obligations under the Insurance Policy.

75. By choosing to participate in a Retrospective Rating Plan, Northern Hills agreed to an incurred loss retrospectively rated plan in which policy premiums were subject to payroll audit and multiple annual adjustments by PMAIC based on incurred losses arising from claims initially made by Defendant's injured workers during the policy period.

76. By failing to pay amounts due under the Insurance Policy, Northern Hills has breached the terms and conditions of the Policy.

77. Additional premium resulting from the payroll audit and First Retrospective Adjustment are not at issue because Northern Hills satisfied that obligation by a combination of credits, a payment, and application of collateral by PMAIC.

78. Northern Hills breached its contract with PMAIC by failing to pay $108,550.00 of additional premium/assessments resulting from the Second Retrospective Premium Adjustment.

79. To date, Northern Hills remains in breach of contract for its continued failure to pay outstanding premium/assessments due on the Insurance Policy as a result of the Second Retrospective Adjustment.

80. Northern Hills' breach of the terms and conditions of the Insurance Policy has resulted in damages to PMAIC in the amount of $108,550.00 in outstanding premium/assessments due under the Insurance Policy plus pre and post-judgment interest together with the costs, fees and expenses of pursuing this action.

## COUNT II:
## FRAUD

81. Plaintiff repeats and realleges the allegations set forth in Paragraphs "1" through "80" of this Complaint as if set forth here.

82. As explained above, Retrospective Ratings Plans are loss sensitive: at its core, this means an insured's past losses affect future premiums.

83. Defendants made several material misrepresentations of fact: Defendants repeatedly requested endorsements seeking to remove and replace various subsidiaries on the Insurance Policy in an attempt to manipulate the subsidiaries' ratings and drive down its premium prices by obscuring and obfuscating the risks and prior losses of Defendants' entities.

84. Defendants orchestrated this scheme by falsely representing that new entities operated or managed Northern Hills facilities when, in fact, those entities were new in name only.

85. Defendants knew that, despite representing new entities operated the facilities, these entities were reincarnations of the old entities.

86. Defendants intended to induce PMA to rely on their representations that new entities operated the facilities so that PMA would be required to change the experience mod ratings as ratings bureaus tell insurance companies to change mods based on the experience of an entity.

87. PMA justifiably relied upon Defendants' representations insofar as Defendants gave PMA evidence that the new entities were distinct from the previous entities.

88. Defendants' fraudulent misrepresentations regarding new control over the facilities PMA insured caused PMA damage.

89. This fraud has caused PMA to be damaged in an amount to be determined at trial.

## COUNT III:
## PIERCING THE CORPORATE VEIL

90. Plaintiff repeats and realleges the allegations set forth in Paragraphs "1" through "89" of this Complaint as if set forth here.

91. Bleier, Sod, and Jeremias frequently create and dissolve or bankrupt legal entities—which share overlapping ownership, officers, directors, and personnel—so that they can enjoy the benefits of corporate status while acting in their individual interests.

92. Bleier, Sod, and Jeremias exercised complete domination of Northern Hills and its subsidiaries (also insureds under the Insurance Policy) as it related to its business generally.

93. Bleier, Sod, and Jeremias exercised complete domination of Northern Hills and its subsidiaries (also insureds under the Insurance Policy) as it related to the Insurance Policy.

94. Bleier, Sod, and Jeremias have abused the privilege of doing business in the form of Northern Hills and its subsidiaries. In doing so, Bleier, Sod, and Jeremias have perpetrated a wrong against PMA by inducing PMA to write a policy in favor of Northern Hills and its subsidiaries that Bleier, Sod, and Jeremias intended to default on with impunity and then avoid liability on by hiding behind the limited liability of inadequately funded LLCs. For these reasons, Plaintiff respectfully submits that this Court, sitting in equity, should intervene and determine that Bleier, Sod, and Jeremias used their complete domination of Northern Hills to commit a fraud (as here and in Count **"II"**) and/or other wrongs against PMAIC.

95. For these reasons, and for any other reasons this Court deems fair, just, and equitable, this Court should hold Bleier, Sod, and Jeremias liable to PMAIC for Northern Hills' breach of contract as set forth in Count **"I"** and fraud as set forth in Count **"II"**.

**WHEREFORE**, Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, requests that this Court grant it judgment and the following relief:

A. On Count I, entering judgment for Plaintiff, PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, against Defendant, NORTHERN HILLS SENIOR LIVING CENTERS, LLC, in the amount of $108,550.00 together with the following relief:

    i. Awarding pre-judgment interest to Plaintiff from Defendant;

    ii. Awarding post-judgment interest to Plaintiff from Defendant;

      iii.    Awarding reasonable attorneys' fees and the costs of this litigation; and

    B.    On Count II, entering judgment for Plaintiff PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, against Defendant, NORTHERN HILLS SENIOR LIVING CENTERS, LLC, in an amount to be determined at trial;

    C.    On Count III, declaring that Bleier, Sod, and Jeremias are liable to PMAIC for all such relief granted to PMA as a result of Northern Hills' breach of contract (Count **"I"**) and/or fraud (Count **"II"**).

    B.    Granting such further relief as this Court deems fair, just, and equitable.

Dated: August 14, 2020

                        SMITH, SOVIK, KENDRICK & SUGNET, P.C.

By: _____
     Karen G. Felter, Esq.
     Bar Roll No.: KF1022
     David M. Katz, Esq.
     Bar Roll No.: DK7416
     *Attorneys for Plaintiff,*
     *Pennsylvania Manufacturers' Association*
     *Insurance Company*
     250 South Clinton Street, Suite 600
     Syracuse, New York 13202
     Telephone:  (315) 474-2911
     Facsimile:  (315) 474-6015
     Email:  kfelter@smithsovik.com
              dkatz@smithsovik.com

TO:  Y. David Scharf, Esq.
Kristin T. Roy, Esq.
Mark S. Jarashow, Esq.
MORRISON COHEN LLP
909 Third Avenue
New York, New York  10022
Telephone:    212/735-8600
Facsimile:     212/735-8708
dscharf@morrisoncohen.com
kroy@morrisoncohen.com
mjarashow@morrisoncohen.com

JONATHAN BLEIER
199 Community Drive
Great Neck, New York 11021-5502

YAAKOV SOD a/k/a JACOB SOD
117 Rand Place
Lawrence, NY 11559-1326

BARUCH JEREMIAS a/k/a BARRY JEREMIAS
8 Primrose Drive
Lakewood, New Jersey 08701-3283